1  David Rapport, City Attorney, SBN: 54384
   CITY OF UKIAH
2  RAPPORT & MARSTON
   405 W. Perkins Street
3  Ukiah, CA 95482
   Telephone:    (707) 462-6846
4  Facsimile:    (707) 462-4235

5  Attorneys for Defendant
   CITY OF UKIAH
6
   Rick W. Jarvis, SBN: 154479
7  Benjamin P. Fay, SBN: 178856
   Daniel P. Doporto, SBN: 176192
8  JARVIS, FAY & DOPORTO, LLP
   475 14TH Street, Suite 260
9  Oakland, CA 94612
   Telephone:    (510) 238-1400
10 Facsimile:    (510) 238-1404
   Email: rjarvis@jarvisfay.com
11
   Attorneys for Defendants
12 CITY OF UKIAH and UKIAH VALLEY
   SANITATION DISTRICT

13

14                **UNITED STATES DISTRICT COURT**

15         **NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION**

16

17 | NORTHERN CALIFORNIA RIVER WATCH, | CASE NO:  **C04 4518 CW** |
   | a non-profit corporation, | |
18 | | |
   |                        Plaintiff, | **CONSENT DECREE AND ORDER** |
19 | | |
   | v. | |
20 | | Complaint Filed:              10/6/04 |
   | CITY OF UKIAH; UKIAH VALLEY | 2nd Amended Complaint Filed:   6/13/05 |
21 | SANITATION DISTRICT; and DOES 1 through | |
   | 10, inclusive, | |
22 | | |
   |                        Defendants, | |
23 | _____/ | |

# RECITALS

A.  The City of Ukiah ("the City") owns, operates, and maintains a wastewater collection system within the City and a wastewater treatment plant.  The City also performs maintenance under contract on additional collection lines located outside the City, which are owned by the Ukiah Valley Sanitation District ("the District").  Wastewater from the collection lines is treated at the treatment plant.  During the summer months (May 15 through September 1), treated wastewater is disposed of through discharge into percolation ponds.  During the winter months (September 1 through May 14), treated wastewater is discharged into the Russian River and the percolation ponds.  The Regional Water Quality Control Board for the North Coast Region ("the Regional Board") has issued Order No. 99-65, regulating the City's treatment plant.  This Order serves both as "Waste Discharge Requirements" pursuant to state law, and as an "NPDES Permit" under the federal Clean Water Act.

B.  Plaintiff Northern California River Watch ("River Watch") has brought this action pursuant to 33 U.S.C. § 1365 alleging that the City and the District have violated and are continuing to violate the NPDES Permit in various respects.  The alleged violations are set forth in letters from River Watch to the City (letter dated August 13, 2004) and the District (letter dated April 13, 2005).  True and correct copies of these letters are attached hereto as **Exhibits A** and **B** and incorporated herein by reference.

C.  River Watch, the City, and the District have consented to the entry of this Consent Decree and Order without trial of any issues, and hereby stipulate that, in order to settle the claims alleged against the District and the City in River Watch's complaint, this Consent Decree should be entered.  This Consent Decree constitutes a settlement of disputed claims.  It is not an admission of jurisdiction over or liability for any claims or an admission of any fact.  Should this proposed Consent Decree fail to be entered for any reason, this proposed Consent Decree, and any statement or other provision contained in this proposed Consent Decree shall have no legal effect and shall not be used for any purpose in any subsequent proceeding in this or any other litigation.

# CONSENT DECREE

In light of the foregoing Recitals, the Parties agree to the entry of a Consent Decree containing the terms set forth below:

I.    **JURISDICTION**

1.    This Court has jurisdiction over the subject matter and the parties in this action pursuant to Section 505 of the Act, 33 U.S.C. § 1365.  The complaint filed by River Watch states a claim upon which relief can be granted pursuant to Section 505 of the Act, 33 U.S.C. § 1365.

2.    Venue is proper in this Northern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because this is the judicial district in which the District's wastewater treatment plant is located.

II.   **APPLICABILITY AND BINDING EFFECT**

3.    This Consent Decree shall apply to and be binding upon River Watch, the District, the City, and their respective employees, agents, successors, and assigns.  To the extent that federal law (including federal principles of res judicata) allows, this Consent Decree shall also be found binding upon other private parties who may hereafter file a citizen suit against the District or the City for alleged violations of the Clean Water Act which have been alleged in this action.  However, this Consent Decree shall not be construed to limit the authority of the United States under Section 309 of the Act, 33 U.S.C. § 1319, or of the State of California (including the Regional Board) under California law.

III.  **INJUNCTIVE RELIEF**

4.    In order to settle River Watch's claim for injunctive relief against future alleged violations, the City and the District shall exercise their best efforts to implement the specific measures described below.  Each of these measures require the City or the District to take actions over and above those actions they have historically taken, in order to substantially reduce the potential for NPDES Permit violations in the future.

5.    As used herein, the term "date of this Consent Decree" shall refer to the date this Consent Decree is executed by the Court.

6.    In order to help reduce infiltration and inflow, the City and the District (as specified below) shall implement the following measures:

    a.    Within four years of the date of this Consent Decree, the City shall complete a televideo inspection of all City and District sewer mains, to identify any maintenance issues or improper cross-connections.

Consent Decree and Order
[C 04 4518 CW]                                                                                                                    3

    b.    Within one year of the date of this Consent Decree, the City shall implement a sewer lateral inspection, repair, and/or replacement program within the City of Ukiah.  Such a program shall include mandatory sewer lateral inspection at point of sale and in conjunction with sewer main repair or replacement.  Repair or replacement of sewer laterals shall proceed according to the need indicated by inspection.  This program need not apply to inter-family transfers, trust transfers, or transfers via inheritance.

    c.    Within one year of the date of this agreement, the District shall implement a sewer lateral inspection, repair, and/or replacement program within the area served by the District.  The District shall comply with this requirement by adopting a program which meets one of the following two sets of criteria:

    (1)    Such a program may consist of a requirement for mandatory sewer lateral inspections at point of sale and in conjunction with sewer main repair or replacement.  Repair or replacement of sewer laterals shall proceed according to the need indicated by inspection.  Such a program need not require inspections for the following sales of property:

    (i)    Inter-family transfers, trust transfers, or transfers via inheritance.

    (ii)    Sales of property where the cost of the property is less than $500,000.  This figure may be indexed pursuant to a reasonable cost-of-living adjustment starting after five years.

    (iii)    Sales of properties whose sewer laterals are more than 500 feet from streams or other surface waters which flow into the Russian River.

    (iv)    Sales of properties whose sewer laterals have already been inspected within the last 25 years, where the sewer lateral is made with PVC, metal, or other modern material meeting the requirements of the current Uniform Plumbing Code or equivalent building code.

|    |    |      |      |    |
|----|----|------|------|----|
| 1  |    |      | (v)  | Sales of properties whose sewer laterals have already been inspected within the last 10 years, where the sewer lateral is not made with PVC, metal, or other modern material meeting the requirements of the current Uniform Plumbing Code or equivalent building code. |
| 6  |    |      | (vi) | Sales of structures whose laterals were last installed or replaced within the last 25 years, where the sewer lateral is made with PVC, metal, or other modern material meeting the requirements of the current Uniform Plumbing Code or equivalent building code. |
| 10 |    | (2)  |      | As an alternative to (1), the District may develop an alternative program where inspections are not necessarily triggered by property sales, but may be prioritized using other criteria (such as age and type of lateral piping material). Such a program shall be sufficient so long as the program is reasonably designed to provide for inspection of 20% of existing sewer laterals within the District within the first 7 years, including a mechanism to provide funding necessary for such inspections. Where the inspections disclose defects in the sewer laterals, the program shall require repair and/or replacement, as necessary. The terms of the alternative program shall be subject to the review and consent of River Watch, but River Watch may not unreasonably withhold its consent so long as the program satisfies the requirements set forth in this paragraph. |

Following adoption of one of these programs, the District retains the discretion to modify the program as it finds appropriate, so long as the program continues to comply with the requirements of (1) or (2) above (including being subject to the review and consent of River Watch, which consent may not be unreasonably withheld, as set forth in (2) above).

    d.    The City and the District are unaware of any illegal connections to their sewer collection lines. The City and the District shall require elimination of any such

illegal connections of which they hereafter become aware, including any storm drains or basement sump pumps, within one year of learning of them.

7. In order to address the potential for overflows from the collection system, the City shall, within one year of the date of this Consent Decree, develop additional, more detailed protocols for the initial field reporting of collection system overflows from the City and District sewer lines, in order to provide a clear record of any such overflows. These protocols shall include the following information:

    a. Identification of the person who received the call reporting the incident and who dispatched the clean-up and repair crew; the time of the call; the location of the spill or problem; and the name of the person reporting the call. The staff person receiving the call shall ask the caller for his or her name, address, phone number, duration of the observed problem, and knowledge of any history of prior problems in the same area, along with any other comments the caller might wish to make. Answers shall be recorded on an intake form or other service sheet.

    b. The service crews shall record the following information: (a) the time of the crews' arrival and departure, (b) whether the overflow was ongoing at the time of arrival, (c) estimated gallons per minute; (d) estimated duration of the overflow; (e) whether the overflow reached a storm drain or surface water; (f) measures taken to repair the system and remediate the damage; and (g) cleaning protocols including whether any chemicals were discharged in the course of clean up.

    c. The City understands that the San Francisco Bay Regional Water Quality Control Board has developed a draft sanitary sewer overflow and monitoring program, and the City shall monitor further development of this program, and shall consider modifications to the City's own spill reporting and response program when the S.F. Regional Board's program is implemented (notwithstanding the fact that the City is not within the jurisdiction of the San Francisco Bay Regional Water Quality Control Board).

8. The City and the District understand that the Regional Board is considering implementing regulations for operating collection systems, sometimes referred to as Capacity,

Consent Decree and Order
[C 04 4518 CW]                                                                                                                                          6

1   Management, Operation and Maintenance ("CMOM") regulations. In maintaining the collection lines
2   of the City and the District, the City shall comply with all applicable CMOM regulations adopted by the
3   Regional Board. This consent decree shall be without prejudice to the right of River Watch to file
4   additional legal or administrative action against the City and/or the District in the future challenging
5   their compliance with any applicable CMOM regulations, but the City and the District reserve all legal
6   defenses they have to any such actions, including any available jurisdictional challenges.

7         9.     Within 18 months from the effective date of this agreement, the City shall, subject to the
8   approval of the Regional Board, have installed at least one additional groundwater monitoring well,
9   located down gradient from the City's percolation ponds and between the ponds and the Russian River.
10  The City shall submit a proposal to the Regional Board, making a good faith attempt to have the well
11  placed in a location well suited to assess the effects of the ponds on the water quality of the surrounding
12  aquifer and the Russian River. River Watch shall have the opportunity to comment upon this proposal.
13  If the Regional Board finds that this one additional groundwater monitoring well, together with the
14  existing monitoring wells, does not adequately characterize the potential groundwater impacts of the
15  percolation ponds, the Board may require the City to construct one more well (for a total of two
16  additional wells). This agreement is subject to the City acquiring necessary property rights from an
17  adjacent landowner, but the City will use its best efforts to do so. The City shall include sampling
18  results from the monitoring wells in the monthly self monitoring reports.

19  **IV.**    **SUPPLEMENTAL ENVIRONMENTAL PROJECT**

20        10.    Within one (1) year of the approval and entry of this Settlement Agreement, the City
21  shall undertake a healthy waterways study, the cost of which to the City shall not exceed $35,000.00,
22  including consultant fees and expenses, and excluding internal City staff costs. The study shall be
23  performed in accordance with the following requirements:
24            a.     The study shall consist of sampling for potential human markers as set forth in the
25                 protocol for the study, which shall be developed by the City within six (6) months
26                 of the execution of this Agreement. The protocol shall be provided to River
27                 Watch for approval, which approval shall not be unreasonably withheld. River
28                 Watch shall return, in writing, any comments it may have on the protocol within

1            twenty-one (21) days of submittal by the City.
2    b.      The purpose of the study shall be to determine whether elevated levels of human markers indicating sewage pollution exist in the surface water of the Russian River and selected feeder creek(s) within the City of Ukiah. Creeks shall be selected for sampling based on their proximity to sewage lines. The creeks closest to the oldest lines where structural defects have been identified shall receive the highest priority. The City shall make a good faith effort to sample all of the highest priority creeks within the limits of the available budget. If elevated levels of human sewage markers are found, one study objective is to determine if there is any correlation between potential leakage from sanitary sewers which are proximate to the impacted waters and the contamination found in those segments of the creek(s) or River. If it is determined that a positive correlation exists between the condition of proximate sewers and creek water quality related to human sewage markers, the City shall use the study results to prioritize sewer inspection activities. All creek sample results shall be provided to River Watch for its review. The City shall act in good faith to take the results of these studies into account in its maintenance activities with respect to its sewage collection lines, in determining whether to repair or replace any of its lines, and in prioritizing the repair and/or replacement of its sewer lines.
3    c.      The details of the study shall be more specifically determined and set forth in the protocol yet to be developed. The City shall develop a protocol which shall attempt to address several approaches, including a study that provides for sampling at one or more feeder creeks (hopefully non-ephemeral creeks) at first flush and low flow, as well as at wet weather flow conditions. One marker which shall be evaluated for use is that of caffeine. Caffeine or some other similar marker shall be used for initial testing. To the extent that marker is found in the study areas at a level which suggests potential sewage related pollution, follow up sampling for fecal coliform and nutrients shall occur. The protocol shall set forth

|   |   |
|---|---|
| 1 | appropriate locations for sampling including, potentially, sampling at the mouth |
| 2 | of feeder creek(s).  The City shall use its best efforts to prepare the protocol in |
| 3 | such a manner to maximize the achievement of the objectives set forth in these |
| 4 | paragraphs 2 and 3.  Although the protocol may modify these suggested |
| 5 | approaches as needed to provide a sound, cost effective study, the City shall act in |
| 6 | good faith to undertake the study in a manner which has the best potential to |
| 7 | demonstrate a correlation, or lack of correlation, between creek pollution and the |
| 8 | condition of adjacent sanitary sewers at a cost within the available budget. |

       d.      The City shall provide the County Department of Health Services (DHS), or other local agency responsible for monitoring recreational waters and beaches with regard to sanitation and healthfulness, including the posting of public notices, with creek water quality testing results and aid said agency in taking appropriate efforts to protect the public using recreational waters and beaches, including posting warning signs if found to be appropriate.

**V.      SETTLEMENT AND RELEASE OF CLAIMS**

      11.      Upon the entry of this Consent Decree, River Watch, on behalf of itself and its members, successors, and assigns, agrees that it releases, acquits, and forever discharges the City, its City Council, the District, its Board, and all employees thereof, from all claims, rights, liabilities, and causes of action arising from or connected with the events referred to, or which could have been referred to, in River Watch's Notice of Intent or the Complaint in this lawsuit, including without limitation, all claims for violations of the Clean Water Act or the Porter Cologne Act, or any other federal or state law, which occurred at any time up to and including the effective date of this Consent Decree.

      12.      The releases set forth in this Consent Decree are not conditioned upon timely compliance by the District or the City with the payment and other obligations of this Consent Decree, and River Watch agrees that its exclusive remedies for a breach of this Consent Decree by the District or the City shall be to move the Court for specific performance, contempt and any other remedies which the law provides for such a breach.  The releases set forth in this Consent Decree extend to unknown as well as known claims.  River Watch hereby waives the benefits of section 1542 of the California Civil Code,

which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected the settlement with debtor."

13. In further consideration of the City's and the District's agreement to enter into this Consent Decree, River Watch, for itself, its members, successors and assigns, covenants and agrees not to sue or take any other steps to enforce any claims, rights, liabilities, or causes of action released hereby. Furthermore, River Watch, for itself and its members, successors and assigns, agrees and covenants that it will not file any lawsuits for any violations of the Clean Water Act or Porter Cologne Act committed by the City or the District during the five (5) year period from the effective date of this Consent Decree, and that River Watch's sole remedy against the District or the City during this period shall be to enforce this Consent Decree by motion for court order. River Watch further covenants and agrees that, at least sixty (60) days before filing any such motion with the Court, it shall notify the City in writing of what actions or inactions by the City it deems to be in violation of this Consent Decree. Thereafter, the parties shall meet and confer in a good faith attempt to resolve their disputes hereunder. If the parties cannot informally resolve the dispute, they will make a good faith effort to mediate the case under the ADR Rules of the Northern District of California prior to the filing of any motion to enforce this Consent Decree. The auspices of the ADR office of this Court may be used to effectuate such mediation.

14. This Consent Decree may be pleaded as a full and complete defense to, and may be used as the basis for any injunction against, any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of this Consent Decree, whether by the parties hereto, any of River Watch's members, successors or assigns, or any third party seeking to assert rights held by the public or any member thereof, whether under the doctrines of res judicata, collateral estoppel, breach of contract or any other law applicable to consent decrees. River Watch covenants and agrees not to cause any third party to commence a citizen's suit under the Clean Water Act for any permit violations which occurred prior to the effective of the Consent Decree or at any time while this Court retains jurisdiction to enforce

this Consent Decree.

## VI.    ATTORNEY'S FEES AND COSTS

15.    Within fifteen (15) days of entry of the Consent Decree by the Court, the City and the District agree to pay River Watch $45,000 to settle its claim for attorney's fees and costs incurred in this action. This payment shall satisfy in full all claims by River Watch for attorney's fees and costs incurred in this action, including any fees and costs associated with the monitoring of compliance with this Settlement Agreement, with the exception of attorney's fees and costs incurred in the course of enforcing this Settlement Agreement in a court of law or by arbitration or mediation. The City's check in payment of these fees shall be made payable to Northern California River Watch.

16.    The District and the City shall bear their own attorneys' fees and costs.

## VII.    NOTICE TO THE FEDERAL GOVERNMENT

17.    The Parties acknowledge and agree that entry of this Consent Decree is subject to the requirements of Section 505(c)(3) of the Act, 33 U.S.C. § 1365(c)(3), which provides that "[n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following receipt of a copy of the proposed consent judgment by the Attorney General and the [EPA] Administrator." Following the Parties' execution of this document, the City shall serve copies upon the EPA Administrator, the Attorney General, and the Regional Administrator of EPA Region IX in San Francisco, in accordance with 40 C.F.R. § 135.5(a).

## VIII.    GENERAL PROVISIONS

18.    All communications between River Watch and Defendant shall be made as follows:

    a.    To the City:    City Manager
City of Ukiah
300 Seminary Avenue
Ukiah, CA 95482

        With a copy to:    Rick W. Jarvis
Jarvis, Fay & Doporto, LLP
475 14th Street, Suite 260
Oakland, CA 94612

    b.    To the District:    Board of Directors
Ukiah Valley Sanitation District
501 Low Gap Road, Room 1010
Ukiah, CA 95482

|     |     |     |     |
| --- | --- | --- | --- |
| 1   | c.  | To River Watch: | River Watch |
| 2   |     |     | 6741 Sebastopol Ave, Suite 140<br>Sebastopol, CA  95472 |
| 3   |     | With a copy to: | Jack Silver, Esq. |
| 4   |     |     | Law Office of Jack Silver<br>P.O. Box 5469<br>Santa Rosa, CA  95402 |

19. This Consent Decree and its terms shall inure to the benefit of and be binding upon each of the parties and each and all of their respective predecessors, successors, assignees, buyers, grantees, vendees or transferees and their past or present, direct or indirect, partners, parents, subsidiaries or divisions as though they were parties to this action.

20. Each of the parties have been fully advised by their attorney as to this Consent Decree and all provisions contained within it, or have decided voluntarily to forego such advice with the full understanding of the repercussions of so doing, and acknowledge signing this Consent Decree based solely upon the written representations contained in this Consent Decree and not based on any inducement, promise or representation not expressly stated in this Consent Decree.  Additionally, each of the parties acknowledges, in signing this Consent Decree, that it constitutes the full, complete, and entirety of the terms and conditions agreed to by them in settling the dispute between them.

21. The City and the District covenant and agree that, before commencing any action or motion to enforce the terms of this Consent Decree, they will provide River Watch with the same 60-day notice, meet and confer procedure and mediation rights as are set forth in Paragraph 13 above.

22. This Consent Decree is made and entered into under the laws of the State of California and the United States and shall be interpreted, governed and enforced pursuant to these laws.

23. Should any provision of this Consent Decree be held invalid or illegal, such illegality shall not invalidate the remainder of this Consent Decree.  In that event, this Consent Decree shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

24. The parties have mutually negotiated this Consent Decree and the doctrine of contra proferentum does not apply.

25. Each signatory of this Consent Decree signing on behalf of another, warrants that he or

1 she has the authority to sign on behalf of said person or entity and all persons covered by this Consent
2 Decree.  This Consent Decree may be executed in counterparts with each counterpart being interpreted
3 as an original.

**IX.    RETENTION OF JURISDICTION**

26.    This Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve any disputes arising hereunder for a period of five years from its entries.  After this five years has elapsed, the City and the District's obligation to comply with the injunctive relief provided for herein shall terminate.

IT IS SO AGREED AND STIPULATED:

Dated _____, 2005         NORTHERN CALIFORNIA RIVER WATCH


By: _____
Its: _____

Dated _____, 2005         CITY OF UKIAH


By: _____
Its: _____

Dated _____, 2005         UKIAH VALLEY SANITATION DISTRICT


By: _____
Its: _____

Consent Decree and Order
[C 04 4518 CW]                                                                                                                        13

APPROVED AS TO FORM:

Dated: _____, 2005        LAW OFFICES OF JACK SILVER

                              By:_____
                                 Jerry Bernhaut
                              Attorneys for Plaintiff NORTHERN CALIFORNIA
                              RIVER WATCH

Dated: _____, 2005        JARVIS FAY & DOPORTO, LLP

                              By:_____
                                 Rick W. Jarvis
                              Attorneys for Defendants CITY OF UKIAH and UKIAH
                              VALLEY SANITATION DISTRICT

IT IS SO ORDERED.

Dated and entered into this 13th day of January, 2006.

_____
CLAUDIA WILKEN
United States District Judge

C:\Documents and Settings\Workstation\Local Settings\Temp\notes06E812\Consent Decree 11-10-05.wpd